## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

MICHAEL C.,[1]

      Plaintiff,

    v.

KILOLO KIJAKAZI,
**Acting Commissioner of Social Security,**

      Defendant.

**Case No. 1:21-cv-16328**
**Magistrate Judge Norah McCann King**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act,

as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Michael C. for Disability

Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff

appeals from the final decision of the Commissioner of Social Security denying that application.[2]

After careful consideration of the entire record, including the entire administrative record, the

Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the

reasons that follow, the Court the Court reverses the Commissioner's decision and remands the

matter for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.
[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

## I.     PROCEDURAL HISTORY

On November 16, 2018, Plaintiff protectively filed the current application for benefits, alleging that he has been disabled since January 5, 2013 ("the 2018 application"). R. 70, 81, 138–41.[3] The application was denied initially and upon reconsideration. R. 86–90, 92–94. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 95–96. ALJ Thomas Merrill ("ALJ Merrill") held a hearing on December 14, 2020, at which Plaintiff, who was represented by counsel, testified. R. 636–59. In a decision dated December 16, 2020, ALJ Merrill concluded that Plaintiff was not disabled within the meaning of the Social Security Act from August 30, 2017, through September 30, 2018, the date on which Plaintiff was last insured. R. 12–20 ("the 2020 decision").[4] That decision became the final decision of the Acting Commissioner of Social Security when the Appeals Council declined review on July 21, 2021. R. 1–6. Plaintiff timely filed this appeal from that decision pursuant to 42 U.S.C. § 405(g). ECF No. 1. On May 3, 2022, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 19.[5] On the same day, the case was reassigned to the undersigned. ECF No. 20. The matter is ripe for disposition.

---

[3] Plaintiff previously filed an application for benefits on May 19, 2014 ("the 2014 application"), which ALJ Thomas Sanzi ("ALJ Sanzi") denied in a written decision on September 1, 2017 ("the 2017 decision"). R. 47–57.

[4] Both ALJ Merrill's 2020 decision and the administrative record identify conflicting dates on which Plaintiff was last insured for DIB. For example, ALJ Merrill identified that date as September 30, 2018, *see* R. 13, 15, 19, 20, and as December 31, 2018, R. 12. The administrative record similarly identifies conflicting dates on which Plaintiff was last insured, specifying both September 30, 2018, R. 116, 121, 129, and December 31, 2018, R. 62, 66–67, 70–71, 76–77, 81, 92, 172, 174. On remand, this date should be clarified.

[5] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

## II.      LEGAL STANDARD

### A.      Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*,

2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.

2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award

5

benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

### B.      Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination

of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    THE 2020 DECISION AND APPELLATE ISSUES

ALJ Merrill explained the context of his decision as follows:

An Administrative Law Judge [ALJ Sanzi] denied a prior application pursuant to a decision issued on August 29, 2017[6] (Exhibit B1A). The claimant did not appeal that decision and it is administratively final. In the current application, the claimant alleged an onset date of January 5, 2013, which falls within the previously adjudicated period. This prior decision related to the same subpart and included the same party. Further, the decision was based on the same facts and issues (see 20 CFR 404.957; HALLEX I-2-4-40). The claimant alleged the same impairments in each case. Further, there have not been changes to any specific sections of the relevant Listings of Impairments. Although the claimant's representative stated that there was new and material evidence for this period, she did not point to any specific evidence that satisfied this requirement. After a review of the record, the undersigned finds that the record contains largely the same evidence relating to the previously adjudicated period that was available at the time of the prior ALJs decision. The evidence of record does not justify reopening this prior decision, and

---

[6] Although ALJ Merrill stated — and at least one other part of the record reflects—that ALJ Sanzi issued the 2017 decision on August 29, 2017, R. 12, 63; the signature block on ALJ Sanzi's 2017 decision reflects a date of September 1, 2017. R. 57.

the undersigned therefore finds the issue of disability for the previously adjudicated periods *res judicata*. *Therefore, the undersigned will only consider the period from August 30, 2017 though the date last insured (December 31, 2018)*.

R. 12 (emphasis added).

At step one, ALJ Merrill found that Plaintiff had not engaged in substantial gainful activity between August 30, 2017, through September 30, 2018, the date on which Plaintiff was last insured for benefits. R. 15.

At step two, ALJ Merrill found that Plaintiff had the following medically determinable impairments: obstructive sleep apnea, hypertension, hyperlipidemia, asthma, post-traumatic stress disorder ("PTSD"), a depression disorder, and a substance use disorder. *Id*. However, ALJ Merrill went on to find that, through the date last insured, Plaintiff did not have a severe impairment or combination of impairments. R. 15–19. ALJ Merrill therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from August 30, 2017, through September 30, 2018, the date on which Plaintiff was last insured. R. 19–20.

Plaintiff disagrees with ALJ Merrill's findings at step two and asks that the decision of the Acting Commissioner be reversed with directions for an award of benefits or, alternatively, reversed and remanded for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 15; *Plaintiff's Reply Brief*, ECF No. 23; *Plaintiff's Rebuttal to Sur-Reply Brief*, ECF No. 27. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the 2020 decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 22; *Defendant's Sur-Reply Brief Pursuant to Local Civil Rule 9.1*, ECF No. 26.

8

## IV.    DISCUSSION

### A.    Appointment of the Commissioner

First, Plaintiff challenges the constitutionality of the appointment of the Commissioner,

arguing that the appointment violates the Constitution's separation of powers. *Plaintiff's*

*Memorandum of Law*, ECF No. 15, pp. 15–17; *Plaintiff's Reply Brief*, ECF No. 23, pp. 1–6.

This Court, however, has previously rejected similar arguments, reasoning as follows:

> The Plaintiff alleges that the Social Security proceedings in their entirety were constitutionally defective because of the appointment of Andrew Saul as Commissioner of the Social Security Administration. (ECF 10 at 31). The parties agree that 42 U.S.C. § 902(a)(3) violates the separation of powers clause to the extent that it is construed as limiting the President's authority to remove the Commissioner without cause. (ECF 15 at 36). Plaintiff argues that because of this violation, the appointed ALJ and the Appeals Council did not have constitutional authority to render a decision on Plaintiff's case. (ECF 10 at 32).
>
> While Plaintiff argues to the contrary, the Supreme Court has already stated that there is no basis to conclude that an appropriately appointed official does not have the authority to carry out the functions of the office, even if his or her position was designed by Congress to impermissibly impinge on the President's right to removal at will. *Collins v. Yellen*, ─── U.S. ───, 141 S. Ct. 1761, 1787-88, 1788 n.23, 210 L.Ed.2d 432 (2021) (plurality opinion) ("As we have explained, there is no basis for concluding that any head of the FHFA lacked the authority to carry out the functions of his office.").
>
>> The Appointment Clause cases do not help the shareholders either. These cases also ask whether an officer can lawfully exercise the statutory power of his office at all in light of the rule that an office must be properly appointed before he can legally act as an officer.... Here, "[a]ll the officers who headed the FHFA during the time in question were properly appointed." There is thus no barrier to them exercising power in the first instance.
>
> *Id*. at 1793 (Thomas, J. concurring) (citations omitted).
>
> Similarly, the Court addressed that the idea that the "taint" of the "mere existence" of the offending removal provision flows down through the executive power exercised by the officer was unavailing. *Id*. at 1788, 1793 ("[W]e have not held that a misunderstanding about authority results in a constitutional defect where the action was otherwise lawful.").

The plurality opinion addresses the most pressing issue: that there must be an adequate nexus between the unconstitutional provision and the case at bar. *See id*. at 1779 ("for purposes of traceability, the relevant inquiry is whether the plaintiffs' injury can be traced to 'allegedly unlawful conduct' of the defendant, not to the provision of the law that is challenged."). So too do the concurring opinions of Justices Thomas and Kagan: "I write separately because I worry that the Court and the parties have glossed over a fundamental problem with removal-restriction cases such as these: The Government does not necessarily act unlawfully even if a removal restriction is unlawful in the abstract." *Id.* at 1789 (Thomas, J. concurring). Similarly, "[w]hen an agency decision would not capture a President's attention, his removal authority could not make a difference—and so no injunction should issue." *Id.* at 1802 (Kagan, J. concurring). *See also Mor v. Kijakazi*, No. 21-1730, 2022 WL 73510, at *4-5 (D.N.J. Jan. 6, 2022).

The Court must now consider, then, whether Plaintiff has sufficiently established a concrete injury inflicted by 42 U.S.C. § 902(a)(3) upon Plaintiff through the ALJ's final decision of finding the Plaintiff not disabled and the Appeals Council's denial of review. Without standing, there is no "case or controversy" to be decided. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016). Plaintiff argues that both the ALJ and the Appeals Council have inflicted the harm of unconstitutional proceedings against Plaintiff and the subsequent denial of benefits. (ECF 10 at 32).

First, the Third Circuit has already expressly stated that "[n]o statutory authority, (the source of the district court's review) authorizes [district courts] to review the Appeals Council decision to deny review," because the Appeals Council exercises "'certiorari-type jurisdiction,'" and renders an ALJ's decision final under the Social Security Act. *Kwasnik v. Kijakazi*, No. 21-08573, 2022 WL 2358424, at *10, 2022 U.S. Dist. LEXIS 116234, at * 30 (D.N.J. Jun. 30, 2022); *see also Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001). Thus, this Court does not have the authority to examine the Appeals Council's decision.

Second, the Plaintiff fails to establish a causal connection between the harm of the ALJ's decision and the impermissible removal provision. As discussed above, and as found by other courts, the mere "taint" of the head of an agency does not establish a sufficient nexus for standing. *See Kwasnik v. Kijakazi*, No. 21-08573, 2022 WL 2358424, at *——, 2022 U.S. Dist. LEXIS 116234, at *33-34 (D.N.J. Jun. 30, 2022) (citing *Andino v. Kijakazi*, No. 21-2852, 2022 WL 1135010, at *6-7 (E.D. Pa. April 18, 2022) ("Justice Alito specified in Collins that Seila Law's holding on standing 'does not mean that actions taken by such an officer are void ab initio and must be undone.' ... [I]t is not difficult to see that Collins requires Andino to demonstrate a nexus between the decision denying her disability benefits and 42 U.S.C. § 902(a)(3)."); *Mor v. Kijakazi*, No. 21-1730, 2022 WL 73510, at *5 (D.N.J. Jan. 7, 2022) ("Plaintiff fails to point to any connection between the Commissioner's removal under Section 902(a)(3) and the ALJ's decision (or any other action in this case). As a result, the requisite nexus is not met, and the Court

denies Plaintiff's appeal on this ground."); *see also Ford v. Kijakazi*, No. 21-1432, 2022 WL 1203731, at *6 (E.D. Pa. Apr. 22, 2022) (denying separation of powers claim because plaintiff failed to show "harm caused by Saul exercising authority he retained by virtue of the unconstitutional removal clause.").

As Justice Kagan noted in Collins, for the Court to redress an injury due to an agency decision made by an agency headed by a single executive subject to an impermissible for-cause removal protection, that agency's decision would need to "capture a President's attention." *Collins*, 141 S. Ct. at 1801-02. Justice Kagan specifically noted that the "mass" of Social Security Administration decisions would likely not create a harm that would allow for redress. Id. ("[O]nly when the President's inability to fire an agency head affected the complained-of decision. Only then is relief needed to restore the plaintiffs to the position they 'would have occupied in the absence' of the removal problem.").

Plaintiff points to a statement by President Biden which purports to indicate that President Biden wanted to fire Commissioner Saul. (ECF 16 at 18). Plaintiff points to the below quote in particular to demonstrate that President Biden wanted to fire the Commissioner from the time of the President's inauguration on January 20, 2021:

> Since taking office, Commissioner Saul has undermined and politicized Social Security disability benefits, terminated the agency's telework policy that was utilized by up to 25 percent of the agency's workforce, not repaired the SSA's relationships with relevant Federal employee unions including in the context of COVID-19 workplace safety planning, reduced due process protections for benefits appeals hearings, and taken other actions that run contrary to the mission of the agency and the President's policy agenda.

*Id.*

First, these harms listed in the news article quote are general and do not show the required concrete, personal, and causal harm required to establish standing. To establish standing, "a plaintiff must show that it has suffered 'an injury in fact' that is 'fairly traceable' to the defendant's conduct and would likely be 'redressed by a favorable decision.'" *Collins*, 141 S. Ct. at 1779 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). "[F]or purposes of traceability, the relevant inquiry is whether the plaintiffs' injury can be traced to 'allegedly unlawful conduct' of the defendant, not to the provision of law that is challenged." *Id.* (quoting *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)); *see also Kwasnik v. Kijakazi*, No. 21-08537, 2022 WL 2358424, at *11 (D.N.J. Jun. 30, 2022).

Plaintiff does not point to a specific legal application, policy, or decision that the ALJ or Appeals Council rendered that had any effect on this case except for the overall denial of benefits, which as explained above was sufficiently supported by

the record. *See Johnson v. Kijakazi*, No. 21-2372, 2022 WL 2342569 at *13, 2022 U.S. Dist. LEXIS 114766 at *36 (E.D. Pa. Jun. 28, 2022) ("Plaintiff has not identified any new regulations, agency policies or directives Commissioner Saul installed that may have affected her claims. Plaintiff thus fails to show how or why [the unlawful] removal clause possibly harmed her.") (internal citations omitted). The unconstitutionally of 42 U.S.C. § 902(a)(3)'s removal restriction simply does not void the ALJ's decision in this mine-run case. The adjudication process and determination by the Social Security Administration remains valid.

*John G. v. Comm'r of Soc. Sec.*, No. 1:21-CV-17256-NLH, 2022 WL 3678108, at *10–12

(D.N.J. Aug. 25, 2022). This decision is consistent with this Court's decisions in other cases

considering similar challenges to the constitutionality of the appointment of the Commissioner.

*See Sheree J. v. Kijakazi*, No. 1:21-CV-05477-NLH, 2022 WL 3211415, at *8–11 (D.N.J. Aug.

9, 2022) (same); *Rebecca L. v. Comm'r of Soc. Sec.*, No. 1:21-CV-13848, 2022 WL 3025908, at

*13–14 (D.N.J. July 31, 2022) ("Accordingly, Plaintiff has not alleged any connection between

the unconstitutional removal provision in § 902(a)(3) and the ALJ's decision denying Plaintiff

benefits, and nothing commands us to vacate the decisions below on that ground. . . . Thus, while

the removal clause in § 902(a)(3) violates the separation of powers, it does not independently

require the Court to remand or reverse the ALJ's decision absent a showing of compensable

harm.") (internal quotation marks and citations omitted); *Daniel M. v. Comm'r of Soc. Sec.*, No.

CV 21-10533 (RMB), 2022 WL 2952912, at *5–7 (D.N.J. July 26, 2022) ("Plaintiff has failed to

show a sufficient nexus between the unconstitutional removal restriction and the ALJ's

decision.") (internal quotation marks and citations omitted); *Margaret S. v. Kijakazi*, No. CV 21-

13556 (SDW), 2022 WL 2753475, at *8–9 (D.N.J. July 14, 2022) ("Plaintiff has offered no

evidence demonstrating that 42 U.S.C. § 902(a)(3)'s removal restriction caused the denial of her

benefits claim or affected the determination of her benefits in any way. . . . As such, further

consideration from this Court on Plaintiff's 'separation of powers' argument is not necessary.

Accordingly, the final decision of the ALJ is not constitutionally defective and remand is not

warranted."); *Kwasnik v. Kijakazi*, No. 3:21-CV-08573, 2022 WL 2358424, at *8–11 (D.N.J. June 30, 2022) ("Plaintiff has failed to show a sufficient nexus between the unconstitutional removal restriction and the ALJ's decision."); *Mor v. Kijakazi*, No. CV 21-1730 (JMV), 2022 WL 73510, at *3–5 (D.N.J. Jan. 7, 2022) ("Plaintiff fails to point to any connection between the Commissioner's removal under Section 902(a)(3) and the ALJ's decision (or any other action in this case.")). Nothing in Plaintiff's briefing in the case presently before this Court persuades this Court that the reasoning in these cases was erroneous. This Court therefore adopts that reasoning and concludes that Plaintiff has not established that remand is appropriate on this basis.

**B.      Appointment of ALJ Sanzi and Reopening the 2017 Decision**

Plaintiff also argues that, because ALJ Sanzi—who adjudicated the 2014 application— had not been properly appointed under the Appointments Clause of the United States Constitution at the time of the 2017 decision, that decision is a legal nullity and therefore not properly adjudicated; this flaw in the earlier action, Plaintiff argues, therefore requires the remand of this action to the Social Security Administration ("SSA") for a new hearing before a different ALJ pursuant to *Lucia v S.E.C.*, -- U.S. --, 138 S. Ct. 2044 (2018), and *Carr v. Saul*, -- U.S. --, 141 S.Ct. 1352 (2021); *Cirko ex rel. Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148 (3d Cir. 2020). *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 11–14; *Plaintiff's Reply Brief*, ECF No. 23, pp. 2–3; *Plaintiff's Rebuttal to Sur-Reply Brief*, ECF No. 27. Plaintiff's argument in this regard is not well taken.

In *Lucia*, the United States Supreme Court held that the administrative law judges with the Securities and Exchange Commission are "Officers of the United States" subject to the Constitution's Appointments Clause, which provides that only the President, "Courts of Law," or "Heads of Departments" can appoint "Officers." *Lucia*, 138 S. Ct. at 2050, 2053–54. *Lucia* also

found that "one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief." *Id.* at 2055 (citation and internal quotation marks omitted). "[T]he 'appropriate' remedy for an adjudication tainted with an appointments violation is a new 'hearing before a properly appointed' official." *Id.* (citations omitted). The Court in *Lucia* went on to clarify that the subsequent "properly appointed" official cannot be the same official "even if he [or she] has by now received (or receives sometime in the future) a constitutional appointment[,]" reasoning that, if that official has already both heard the "case and issued an initial decision on the merits[,]" he or she "cannot be expected to consider the matter as though he [or she] had not adjudicated it before. To cure the constitutional error, another ALJ (or the Commission itself) must hold the new hearing to which [the claimant] is entitled." *Id.*

"In response to *Lucia* and in light of an executive order concluding that 'at least some—and perhaps all—ALJs are 'Officers of the United States' and thus subject to the Constitution's Appointments Clause,' Exec. Order No. 13,843, 83 Fed. Reg. 32,755 (July 13, 2018)," the Acting Commissioner of Social Security reappointed all of the agency's ALJs, including the ALJs and the Administrative Appeals Judges of the SSA's Appeals Council. *Cirko*, 948 F.3d at 152.

Thereafter, the Commissioner issued SSR 19-1p, which provided the procedure for a timely Appointments Clause challenge:

> When the Appeals Council grants review based on a timely-raised Appointments Clause challenge, [Administrative Appeals Judges] who have been appointed by the Acting Commissioner (or whose appointments the Acting Commissioner has ratified) will vacate the hearing decision or dismissal. In cases in which the [unconstitutionally appointed] ALJ made a decision, the Appeals Council will conduct a new and independent review of the claims file and either remand the case to an ALJ other than the ALJ who issued the decision under review, or issue its own new decision about the claim covering the period before the date of the ALJ's

14

decision. In its review, the Appeals Council will not presume that the prior hearing decision was correct.

In cases in which the ALJ dismissed a request for a hearing, the Appeals Council will vacate the ALJ's dismissal order. It will then either: (1) Decide whether the request for a hearing should be dismissed, or (2) remand the case to another ALJ to determine that issue.

SSR 19-1p, 2019 WL 1324866, *3 (Mar. 15, 2019); *see also Carr*, 141 S. Ct. at 1362 (holding, in a subsequent review of the issue, that "claimants are not required to exhaust certain issues in administrative proceedings to preserve them for judicial review" and that claimants who raise an Appointments Clause challenge "for the first time in federal court are not untimely in doing so").

In the case presently before this Court, Plaintiff contends that ALJ Sanzi was unconstitutionally appointed at the time he issued the 2017 decision. *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 11–14; *Plaintiff's Reply Brief*, ECF No. 23, pp. 2–3; *Plaintiff's Rebuttal to Sur-Reply Brief*, ECF No. 27. Plaintiff argues that remand is therefore required because the 2017 decision is a legal nullity, thus leaving a disability period unadjudicated, *i.e.*, the period from January 5, 2013, Plaintiff's alleged disability onset date, through the date of that decision, September 1, 2017. *Id.*

For her part, the Acting Commissioner points out that Plaintiff never appealed ALJ Sanzi's 2017 decision denying Plaintiff's 2014 application, and that the time for doing so has long since passed. *Defendant's Sur-Reply Brief Pursuant to Local Civil Rule 9.1*, ECF No. 26, p. 2 (citing R. 63; 42 U.S.C. § 405(g) (permitting appeals of final agency decision within sixty days after the notice of the decision is mailed to a claimant); 20 C.F.R. § 404.987 ("[I]f you are dissatisfied with a determination or decision made in the administrative review process, but do not request further review within the stated time period, you lose your right to further review and that determination or decision becomes final."). The Acting Commissioner argues that neither

*Lucia* nor *Cirko* nor *Carr* has carved out Appointments Clause challenges from the defined limits on the waiver of sovereign immunity set forth in 42 U.S.C. § 405(g). *Id*. at 2–3 (citations omitted). The Acting Commissioner highlights that the only ALJ decision under review in this Court is ALJ Merrill's 2020 decision, which was issued by a properly appointed ALJ. *Id*. To the extent that Plaintiff challenges ALJ Merrill's refusal in 2020 to reopen the 2017 decision, the Acting Commissioner takes the position that Plaintiff cannot use a request to reopen to circumvent the finality of the 2017 decision. *Id*. at 4. The Acting Commissioner further argues that Plaintiff has not shown a colorable constitutional claim in seeking to reopen the 2017 decision. *Id*. at 4–5.

Plaintiff, however, insists that the 2017 decision is a legal nullity because Judge Sanzi was not properly appointed when he issued that decision. *Plaintiff's Rebuttal to Sur-Reply Brief*, ECF No. 27, pp. 1 – 2. Plaintiff therefore continues to contend that ALJ Merrill's refusal to adjudicate any period prior to August 29, 2017, has the effect of leaving a significant portion of Plaintiff's claim unadjudicated. *Id*. at 2.

Plaintiff's arguments are not well taken. A refusal to reopen a Social Security claim is ordinarily not subject to review under 42 U.S.C. § 405(g). *Califano v. Sanders*, 430 U.S. 99, 107–08 (1977). However, an exception to this general rule exists when a claimant meets the burden of establishing a "colorable constitutional claim[]." *Id*. at 109. Notably, this "constitutional issue must concern the proceeding at which the decision not to reopen was made[;]" a "constitutional claim relating to the first application is insufficient to confer subject matter jurisdiction over this appeal of the reopening decision." *Cherry v. Heckler*, 760 F.2d 1186, 1190 n.4 (11th Cir. 1985). "Otherwise, constitutional claims arising out of an administrative proceeding could be preserved indefinitely through requests to reopen." *Id*.

16

In the case presently before the Court, as previously detailed, ALJ Merrill correctly noted that Plaintiff never appealed ALJ Sanzi's 2017 decision issued on September 1, 2017. R. 12; *see also* R. 63, 72. The time for appealing the 2017 decision has long since passed. *See* 42 U.S.C. § 405(g) (permitting appeals of final agency decisions within sixty days after the notice of the decision is mailed to a claimant). As explained above, Plaintiff cannot successfully collaterally attack ALJ Merrill's 2020 decision by now attacking ALJ Sanzi's 2017 decision: The constitutional claim sought to be raised must arise out of the 2020 decision that Plaintiff now challenges. *See Cherry*, 760 F.2d at 1190 n.4; *cf. Obenchain v. Comm'r of Soc. Sec. Admin.*, No. 1:20-CV-168-JVB-JPK, 2022 WL 10311981, at *3, 11–13 (N.D. Ind. June 24, 2022) (finding that, where "the complaint mounts a collateral attack on the ALJ's decision, asserting it is a 'nullity' as a result of the Supreme Court's decision in *Lucia*[,]" the claimant did not have a "clear right to raise the unconstitutional appointment of the ALJ who issued the decision denying his benefits application in a collateral proceeding filed after the ALJ's decision had already become final[,]" rejecting the claimant's attempt "to avoid principles of finality by arguing that there was no ALJ decision to become final, only a 'purported decision (a non-decision because such person was not an ALJ) which purported to deny disability benefits[,]'" and concluding that "Plaintiff's entire complaint is based on the mistaken premise that the ALJ's decision is a nullity because of the nonjurisdictional Appointments Clause violation. . . . Plaintiff does not have a clear right to relief from the Commissioner's denial of his benefits application based on the holdings in *Lucia* and *Carr*, both of which involved direct, timely-filed appeals") (citations omitted), *report and recommendation adopted sub nom. Obenchain v. Kijakazi*, No. 1:20-CV-168-JVB-JPK, 2022 WL 4545937 (N.D. Ind. Sept. 28, 2022), *aff'd*, No. 22-3138, 2023 WL 3690832 (7th Cir. Mar. 31, 2023). Accordingly, because Plaintiff failed to timely challenge the

2017 decision, that avenue of relief is no longer open to him; he will not be permitted to use a request to reopen the final 2017 decision, made in the context of his challenge to the 2020 decision, as an end-run around that failure to pursue a timely appeal. *See id.* It is important to note that, in reaching this conclusion, the Court makes no finding or conclusion regarding the 2017 decision; it is only the 2020 decision that is before this Court for review.

## C.    Step Two

Plaintiff contends that ALJ Merrill erred when he denied Plaintiff's claim at step two of the sequential evaluation process by finding that Plaintiff suffers no severe impairment. *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 5–11; *Plaintiff's Reply Brief*, ECF No. 23, pp. 6–10. Plaintiff specifically argues that ALJ Merrill improperly cherry-picked findings in the record to undermine the severity of Plaintiff's impairments. *Id.* The Commissioner disagrees, arguing that substantial evidence supports the ALJ's denial of benefits at step two of the sequential evaluation process. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 22, pp. 18–22.

"The step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). Therefore, "[t]he burden placed on an applicant at step two is not an exacting one." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). "Although the regulatory language speaks in terms of 'severity,' the Commissioner has clarified that an applicant need only demonstrate something beyond 'a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work.'" *Id.* (quoting SSR 85-28, 1985 WL 56856, at *3; citing *Newell*, 347 F.3d at 546). Courts must resolve any doubt as to whether this showing has been made in favor of the claimant. *Id.*; *see also Newell*, 347 F.3d at 547. While a reviewing

18

court should not apply a more stringent standard of review when the Commissioner denies benefits at step two, "its invocation is certain to raise a judicial eyebrow" because "step two is to be rarely utilized as a basis for the denial of benefits[.]" *McCrea*, 370 F.3d at 361.

In the case presently before the Court, Plaintiff complains that ALJ Merrill improperly cherry-picked the record to undermine the severity of Plaintiff's impairments in order to deny his claim at step two. *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 5–11; *Plaintiff's Reply Brief*, ECF No. 23, pp. 6–10. Plaintiff also notes that, although ALJ Merrill stated that he would consider only the period beginning the day after the 2017 decision was issued through the date on which Plaintiff was last insured, *i.e.*, December 31, 2018, ALJ Merrill actually relied on certain evidence outside this time period to discredit the severity of Plaintiff's impairments. *Id.* (citing, *inter alia*, R. 12).

Plaintiff's arguments are well taken. ALJ Merrill found that the record documented the medically determinable impairments of obstructive sleep apnea, hypertension, hyperlipidemia, asthma, post-traumatic stress disorder, depression disorder, and substance use disorder. R. 15. However, in finding, *inter alia*, that none of Plaintiff's mental impairments were severe, ALJ Merrill found that Plaintiff "reported improved symptoms after only a short time, noting improved energy, better concentration with sleep, and no nightmares (Exhibit B5F, pp. 21-22 [R. 492–493]; B6F/10 [R. 536])." R. 18. In making this finding, ALJ Merrill referred to evidence dated months after Plaintiff's date last insured of December 31, 2018 (or September 30, 2018), despite the fact that ALJ Merrill expressly stated that he considered only the period from August 30, 2017, through December 31, 2018. R. 23. Moreover, the records on which ALJ Merrill relied in making this finding also contain contrary evidence that was apparently ignored by ALJ Merrill. *See id*. For example, Exhibit B5F/21–22, R. 492–93, which is a note dated April 2, 2019,

reflects that Plaintiff's medication caused drowsiness; that Plaintiff had stopped taking some medications because he felt that they were not working; that Plaintiff reported feeling hyper-alert and on guard; that he had thoughts of suicide; and that examination revealed limited insight and judgment on Plaintiff's part. *Id.* Exhibit B6F/10, R. 536, which is a note dated June 4, 2019, reflects that Plaintiff's mood had been up and down; that Plaintiff had felt depressed a week before the examination; that Plaintiff had had thoughts of suicide three days before the examination; that Plaintiff had continued to have nightmares that caused him to wake up and had suffered from the same recurring dreams; and that examination revealed that Plaintiff had limited insight and judgment. *Id.* ALJ Merrill also found that Plaintiff "was able to handle personal care during this time, exercise, and do other activities independently (e.g., Ex.B4F/112 [R. 454])." R. 18. However, this evidence is taken from a medical record dated April 17, 2017, R. 454, *i.e.,* before the beginning of the period that ALJ Merrill said he would consider. R. 12.

Where ALJ Merrill selectively cited, without explanation, medical evidence that supported his assessment but ignored contrary evidence, and where ALJ Merrill cited evidence generated before and after the period of time purportedly considered by him, this Court cannot conclude that substantial evidence supports ALJ Merrill's findings at step two. *See Quinn v. Kijakazi*, No. 3:20-CV-01698, 2022 WL 178824, at *5 (M.D. Pa. Jan. 18, 2022) ("A selective approach to the evidence does not constitute substantial evidence upon which an ALJ may reasonably rely to deny benefits.") (citations omitted); *Segal v. Comm'r of Soc. Sec.*, No. CV 19-8839, 2020 WL 2111229, at *6–7 (D.N.J. May 4, 2020) (remanding where "the Court finds that the ALJ nonetheless erred in his treatment of medical evidence in the record: although the ALJ did not entirely ignore treatment notes from Plaintiff's providers, he selectively cited portions of these notes, rather than addressing the conflicting evidence within these records"); *Pastuch v.*

*Comm'r of Soc. Sec.*, No. CV 17-989, 2018 WL 2018063, at *9 (D.N.J. May 1, 2018) ("The ALJ must not ignore the opinions of treating professionals or cherry pick evaluations, diagnostics, or opinions that support a particular conclusion."); *cf. Roberts v. Kijakazi*, No. CV 21-14-CJB, 2022 WL 17403479, at *11 (D. Del. Dec. 2, 2022) ("[A]lthough the ALJ cited to the above-referenced positive therapeutic findings . . . , the ALJ failed to substantively discuss the many negative clinical observations found in those same records" and, "[i]n failing to substantively engage with the above-referenced negative clinical observations and findings, the ALJ rendered it unclear whether she considered any such evidence when determining Roberts' RFC (and if so, why she discounted it)"); *DeJesus v. Colvin*, No. CIV. 14-4798, 2015 WL 4902159, at *8 (D.N.J. Aug. 17, 2015) ("Adopting only portions of an opinion that support the ALJ's RFC findings while failing to address those portions that contradict them . . . will not suffice as an adequate explanation.").

Moreover, ALJ Merrill also specifically found that Plaintiff's medically determinable impairments "could have reasonably been expected to produce the alleged symptoms[.]" R. 16–17. Yet ALJ Merrill went on to focus on Plaintiff's mental health treatment history, noting that Plaintiff "received little focused [mental health] treatment during the relevant period[,]" R. 17, and "did not require any emergency treatment or hospitalizations during the relevant period[,]" and that "the longitudinal treatment record relating to the relevant period does not show that these impairments caused more than mild limitations in any areas of mental functioning." R. 18. In doing so, however, ALJ Merrill appears to have imported to step two of the sequential evaluation process an analysis appropriate at later stages of the sequential evaluation. *Id*.

A conflation of analyses resulted in the remand of the action in *McCrea*, 370 F.3d at 362. In that case, the ALJ found that x-ray and MRI evidence revealed only "small" or "mild"

21

abnormalities, that complaints of pain were treated with over the counter non-steroidal anti-inflammatory medications, and that an opinion as to limited physical functioning was entitled to no significant weight because that opinion was "inconsistent with the medical evidence and conservative treatment strategies detailed in the record." *Id.* The United States Court of Appeals for the Third Circuit concluded in that case that "[w]e need not concern ourselves with this reasoning at length. Although the observations made by the ALJ may or may not be relevant *in later steps of the sequential analysis . . . they certainly do not carry the day at step two.*" *Id.* (citations omitted) (emphasis added). The Third Circuit concluded that the claimant's condition was sufficiently "severe" under the *de minimis* step two standard to warrant further consideration of the sequential evaluation process. *McCrea*, 370 F.3d at 362.

The documents referred to by ALJ Merrill contain, *inter alia*, evidence of suicidal ideation, mood swings, recurring nightmares that disrupt Plaintiff's sleep, and limited insight and judgment. R. 18, 454, 492–93, 536. In light of this evidence, and without further explanation by the ALJ, the Court cannot conclude that ALJ Merrill's step two analysis is supported by substantial evidence. Moreover, this Court cannot find that this error at step two was harmless where, as a result, the ALJ failed to fully consider Plaintiff's allegations of disability. *Cf Sherrard v. Saul*, No. 3:18-CV-01590, 2019 WL 4254134, at *7 (M.D. Pa. Aug. 12, 2019), *report and recommendation adopted*, No. 3:18-CV-1590, 2019 WL 4256282 (M.D. Pa. Sept. 6, 2019) ("Additionally, the finding that all of Sherrard's alleged impairments were either non-medically determinable or non-severe cannot be deemed harmless error in this case. Indeed, had Sherrard credited Dr. Kanouse's opinion or otherwise found in his favor at step two, the evaluation of his DIB claim may have resulted in a different outcome.").

For all these reasons, ALJ Merrill's denial of benefits at step two warrants remand in this case.

## V.    CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  November 20, 2023                                 *s/Norah McCann King*
                                                  NORAH McCANN KING
                                          UNITED STATES MAGISTRATE JUDGE